UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   Plaintiff,<br><br> v.<br><br>JARCQUES GASTON,<br>   Defendant. | )<br>)<br>)<br>) CAUSE NO.: 2:21-CR-36-JD-JPK<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on the government's motion for pretrial detention. On March 18, 2021, Defendant Jarcques Gaston was charged with six counts of making false statements to firearms dealers, with three counts asserting violation of 18 U.S.C. § 922(a)(6) and three counts asserting violation of 18 U.S.C. § 922(a)(1)(A). An arraignment and detention hearing were held on March 22, 2021, and the detention hearing was continued to March 24, 2021. For the reasons set forth below, Gaston was ordered detained pending trial. This Opinion and Order follows to supplement the reasons explained by the Court during the hearing on March 24, 2021.

The parties dispute whether the government is entitled to a detention hearing in this matter, so the Court will resolve that issue first. The parties also disagree as to whether the government's proffer concerning uncharged conduct can support its motion to detain Gaston pending trial. While these disputes consume much of this opinion, the Court must ultimately decide whether there are any conditions or combination of conditions that can reasonably assure Gaston's appearance as required or the safety of the community. The government has the burden of showing not only that Gaston is a danger to the community or a flight risk, but also that there are no conditions that could mitigate those risks and provide reasonable assurances. The Court has considered all possible conditions and sees none that can reasonably assure the safety of the community.

The government's proffer and an analysis of the factors the Court must consider are discussed in more detail below. In brief, what is most concerning is the government's proffer that Gaston purchased multiple firearms, both those that gave rise to the charges in this case and others. The fact that Gaston purchased these firearms is not easily contested. And while Gaston might have done so lawfully in some instances, the whereabouts of at least one of these firearms is unknown, and two were later recovered from convicted felons – one was recovered from a convicted felon approximately twenty-two days after Gaston purchased it, and the other was recovered from a convicted felon approximately three months after Gaston purchased it. Additionally, although a good deal of the government's proffer of uncharged conduct appears to rest upon the testimony of witnesses this Court cannot evaluate, in at least two instances there is corroborating information. First, a 2018 battery charge involved an alleged victim with injuries that were seen by responding medical personnel. Second, a separate alleged victim's report of being assaulted and pistol whipped is supported by law enforcement's observation of injuries and the fact that law enforcement found Gaston carrying a firearm matching the description of the firearm that was reportedly used in the assault.

While the Court continued the detention hearing to allow for a review of whether Gaston's residence was suitable for electronic monitoring, even the most restrictive conditions cannot provide reasonable assurances of community safety. At least one firearm that Gaston purchased is unaccounted for, and any efforts to ensure that firearm is located and not provided to a felon would require Gaston's candor and cooperation. Unfortunately, however, Gaston gave incorrect information regarding certain details of his living situation to a probation officer, thereby thwarting attempts to locate any missing firearms and fashion conditions of release that would prevent Gaston from gaining access to them and otherwise protect against the potential for domestic or

other violence. As explained below, these facts weigh heavily in favor of detention. But before turning to that issue, the Court first addresses the parties' arguments regarding the government's entitlement to a detention hearing and the standard for weighing evidence of prior conduct.

### I. The Government's Motion for Pretrial Detention

Under the Bail Reform Act of 1984 ("Bail Reform Act"), courts "shall hold" detention hearings in two instances. The first instance is when the case involves any one of the enumerated serious offenses outlined in § 3142(f)(1), the so called "(f)(1)" cases involving allegations of particularly dangerous criminal activity. The second instance is when one of the "serious" concerns about risk of flight or obstruction of justice are present, the so called "(f)(2)" cases. 18 U.S.C. § 3142(f)(2). Once one of these conditions is met, a hearing is held "to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community." *Id.* § 3142(f). That is, there can be no detention hearing–and therefore no detention–unless an (f)(1) or (f)(2) criterion is met. Even then, detention is only proper where, after a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e).

In the instant case, the government has moved for a detention hearing under Section 3142(f)(1)(E), which allows for such a hearing in a case that involves:

> any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon, or involves a failure to register under section 2250 of title 18, United States Code[.]

18 U.S.C. § 3142(f)(1)(E). The government asserts that a detention hearing is proper because the acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6) is a felony "that involves the possession or use of a firearm . . . ." 18 U.S.C. § 3142(f)(1)(E). Gaston, in turn, argues that

3

"acquisition" as used in Section 922(a)(6) is not the same as "possession" as used in Section 3142(f)(1)(E). (Def.'s Mem. 1-2, ECF No. 13) ("The possession or use of a firearm simply is not involved in proving the felony offense defined by §922(a)(6).").

"When interpreting a statute, we begin with the text." *Loja v. Main St. Acquisition Corp.*, 906 F.3d 680, 683 (7th Cir. 2018). "A word or phrase in a statute should not be interpreted in a vacuum; rather, 'the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Id*. (quoting *Sturgeon v. Frost*, 136 S. Ct. 1061, 1070 (2016)). Even when a statute is "awkwardly phrased," there are times when its "text and context together reveal a straightforward reading." *See Lockhart v. United States*, 136 S. Ct. 958, 962 (2016). And while the parties have not addressed all of the various (and at times competing) cannons of statutory construction, a review of the relevant text shows that, even under the most restrictive reading of the text (which is the one Gaston advances), the Bail Reform Act provides for a detention hearing here.[1]

Perhaps the Bail Reform Act is not entirely clear as to whether the Court should look solely at the elements of the crime charged when determining if a detention hearing is required under Section 3142(f)(1)(E), or should instead consider the broader facts and circumstances surrounding the crime charged in an individual case. As noted above, Section 3142(f)(1)(E) provides for a

---

[1] Although the need to make a prompt determination on detention allowed only slightly over a day for the briefing of this matter, the Court found this, and the other issues discussed herein, relatively well developed. Regarding the government's right to a detention hearing, one could argue for a narrower reading of Section 3142(f)(1)(E), particularly in light of Section 3142(g)'s reference to the "nature and circumstances of the *offense* charged." 18 U.S.C. § 3142(g)(1) (emphasis added). The government, by contrast, relied heavily on a Second Circuit Court of Appeals decision which instead concluded that the phrase "any felony . . . that involves the possession or use of a firearm" in Section 3142(f)(1)(E) "warrants a conduct-specific inquiry in which the judicial officer may look *beyond the elements of the charged offense* to consider the *actual conduct underlying the arrestee's charged offense*" when analyzing whether the government is entitled to a detention hearing. *See United States v. Watkins*, 940 F.3d 152, 166 (2d Cir. 2019) (emphasis added), *cert. denied*, 140 S. Ct. 2584 (2020); Gov.'s Mem. 2-4, ECF No. 12. As explained below, it is unnecessary to resolve this issue here, because the government is entitled to a detention hearing under Section 3142(f)(1)(E) even if the Court is limited to considering the elements of the offense charged, and not the conduct underlying that charge.

detention hearing in a case that involves "any felony that is not otherwise a crime of violence . . . that involves the possession or use of a firearm . . . ." 18 U.S.C. § 3142(f)(1)(E). Under the most restrictive reading of this section, the clause "that involves the possession or use of a firearm" modifies "any felony that is not otherwise a crime of violence," and thus restricts the term "felony" to the elements of the crime charged. Gaston argues for this restrictive reading and asserts that such an interpretation would prohibit a detention hearing under Section 3142(f)(1)(E) for the current charges. But the Court need not decide, and expresses no view on, whether this restrictive reading is the proper interpretation of the Bail Reform Act, because even under such a reading, Gaston's argument fails.

Gaston was charged with, *inter alia*, three violations of 18 U.S.C. § 922(a)(6). The essential elements of a Section 922(a)(6) charge are:

1. The defendant made a false statement in connection with the acquisition or attempted acquisition of a firearm or ammunition from a licensed firearms dealer;

2. The defendant did so knowingly; and

3. The statement was intended to or likely to deceive the dealer with respect to any fact material to the lawfulness of the sale or other disposition of the firearm.

18 U.S.C. § 922(a)(6). Here, each charge under Section 922(a)(6) alleges a false statement "in connection with the acquisition of a firearm," not an attempted acquisition. (Indictment, ECF No. 1 (Counts 1, 3, 5)). Gaston thus asks the Court to conclude that the "acquisition" of a firearm does not always involve the "possession" of a firearm, but the controlling case law precludes any such argument.

When evaluating the definition of "acquisition" as used in Section 922(a)(6), the Supreme Court of the United States noted that "[t]he word 'acquire' is defined to mean simply 'to come into possession, control, or power of disposal of.'" *Huddleston v. United States*, 415 U.S. 814, 820, 94

5

S. Ct. 1262, 1267 (1974) (quoting Webster's New International Dictionary (3d ed. 1966); *United States v. Laisure*, 460 F.2d 709, 712 n. 3 (5th Cir. 1972)).[2] Any effort to parse the definition of "acquire" in *Huddleston* to argue that "control" or "power of disposal of" somehow connote terms distinct from "possession" fails when one considers that the Seventh Circuit Court of Appeals has supported a broad definition of "possession" in numerous circumstances. The Court of Appeals has explained that "[p]ossession may be either actual or constructive." *United States v. Kitchen*, 57 F.3d 516, 520 (7th Cir. 1995). Thus, for violations of 18 U.S.C. § 922(g)(1), "possession as an element of the crime can be established despite the fact that the firearm was not in the immediate possession or control of the defendant," since constructive possession "exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others . . . ." *Kitchen*, 57 F.3d at 520 (quoting *United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir. 1990)).

Similarly, in the context of a charge for possession of cocaine with intent to distribute, brought pursuant to 21 U.S.C. § 841(a)(1), the Court of Appeals has noted that "[t]he constructive possession cases teach that a defendant must have ultimate control over the drugs." *Id.* at 524. Expanding on these concepts, the Court of Appeals explained:

> Implicit in a common-sense understanding of possession-both actual and constructive-is the notion that a defendant has some right or ability to control the disposition of an object. An approved jury instruction on actual possession, for

---

[2] The text of Section 922(a)(6) considered by the Supreme Court in *Huddleston* was substantively identical to the current text of the statute. *Compare* 415 U.S. at 815 n. 1 (quoting Section 922(a)(6) as "(a) It shall be unlawful--(6) for any person in connection with the acquisition . . . of any firearm . . . from a . . . licensed dealer . . . knowingly to make any false or fictitious oral or written statement . . . intended or likely to deceive such . . . dealer . . . with respect to any fact material to the lawfulness of the sale or other disposition of such firearm . . . under the provisions of this chapter"), *with* 18 U.S.C. § 922(a)(6) ("(a) It shall be unlawful--(6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter").

> instance, states that a "person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it."

*Id.* at 524 n. 2 (quoting *United States v. Perlaza*, 818 F.2d 1354, 1361 n. 3 (7th Cir. 1987), *cert. denied*, 484 U.S. 861 (1987)). Consistent with these principles, the Court of Appeals has also upheld a jury instruction that defined "possession" as follows:

> Possession of an object is the ability to control it.
>
> Possession may exist even when a person is not in physical contact with the object, but knowingly has the power and intention to exercise direction and control over it, either directly or through others.
>
> Also, an individual may possess an object if other individuals share the ability to exercise control over the object. Possession may be either sole or joint. If one person alone has possession of an object, possession is sole. If two or more persons share possession of an object, possession is joint. If you find beyond a reasonable doubt that the defendant knowingly possessed the object in question, either alone or jointly with others, you should find that the defendant possessed the object.
>
> A person can possess an object without owning the object, provided that the person has the power and intention to control the object.

*United States v. Lawrence*, 788 F.3d 234, 245-46 (7th Cir. 2015).

Thus in sum, "the essential proof of possession" required by the law of this jurisdiction "is some factor indicating that [the defendant] had the authority or the ability to exercise control over the contraband." *Kitchen*, 57 F.3d at 523. Here, Gaston was charged with making a false statement in connection with the acquisition of a firearm in violation of Section 922(a)(6), not an attempted acquisition. (Indictment, ECF No. 1 (Counts 1, 3, 5)). And as noted above, Section 3142(f)(1)(E) allows for a detention hearing in a case that involves "any felony that is not otherwise a crime of violence . . . that involves the possession or use of a firearm . . . ." Ultimately, in light of the cases cited above, the Court can find no support for Gaston's assertion that "acquisition" as used in Section 922(a)(6) fails to encompass "possession" as that term is used in Section 3142(f)(1)(E).

Accordingly, a detention hearing was proper here even under the restrictive reading of Section 3142(f)(1)(E) that Gaston advances.

## II.     Standard for Weighing Evidence of Prior Conduct

Section 3142(g) requires the Court to consider numerous factors in reaching a determination regarding detention, including Gaston's criminal history and "the nature and seriousness of the danger to any person or the community that would be posed by [Gaston's] release." 18 U.S.C. § 3142(g)(3)(A), (g)(4). The government urges the Court to consider prior, uncharged conduct as part of this evaluation. Gaston, in turn, argues that the government's proffer of such conduct consists entirely of hearsay, which is impossible to counter.

Initially, the Court notes that the Federal Rules of Evidence do not apply to information presented to the Court during a detention hearing. *United States v. Portes*, 786 F.2d 758, 767 (7th Cir. 1985) ("Although traditional rules of evidence do not apply at the [detention] hearing, the defendant has a right to counsel, a right to testify, a right to call witnesses, and a right to cross-examine witnesses." (citing 18 U.S.C. § 3142(f))). "As in a preliminary hearing for probable cause, the government may proceed in a detention hearing by proffer or hearsay." *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986). In fact, the Bail Reform Act itself specifically allows for the introduction of evidence "by proffer or otherwise." 18 U.S.C. § 3142(f). But while the admissibility of the government's evidence and proffer regarding prior uncharged conduct is not at issue here, the Court must still consider the proper weight to place upon it.

The government's proffer involves a substantial amount of both uncharged conduct and conduct that has not resulted in a conviction. The Second Circuit Court of Appeals has implicitly endorsed the consideration of uncharged conduct during a detention hearing. *See United States v. Barone*, 387 F. App'x 88, 90 (2d Cir. 2010) (affirming detention of defendant based, in part, on

uncharged crimes); *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) (finding that the district court erred in rejecting information regarding an uncharged shooting allegedly committed by the defendant). And multiple district courts in several jurisdictions have noted that uncharged conduct may be considered during a detention hearing, though it should be afforded less weight in evaluating whether a defendant poses a danger to the community. *See United States v. Sanders*, 466 F. Supp. 3d 779, 786 (E.D. Mich. 2020) ("Uncharged conduct should be accorded comparatively less weight in assessing dangerousness."); *United States v. Tolbert*, No. 3:09-CR-56-TAV-HBG, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) ("In considering the § 3142(g) factors, the court may consider both actual convictions and mere arrests or indictments to assess the defendant's dangerousness, though the latter will typically weigh less heavily in favor of detention . . . In any event, the court may consider evidence of the defendant's past or present wrongful conduct as indicative of a defendant's dangerous tendencies, regardless of whether such conduct resulted in a state or federal prosecution. This is because the § 3142(g) analysis is concerned with a practical assessment of the defendant's dangerousness, rather than an adjudication of guilt for a particular offense."); *United States v. Bruno*, 89 F. Supp. 3d 425, 430 (E.D.N.Y. 2015) ("[T]he Court may consider uncharged conduct in assessing the degree of danger posed by a defendant's release.").

Thus, while the Court considers the government's proffer, including uncharged conduct, it must carefully weigh the reliability of such evidence in a manner that is usually not required when criminal convictions are used to argue for detention. As the Second Circuit Court of Appeals has noted, the Court "retains the responsibility for assessing the reliability and accuracy of the government's information, whether presented by proffer or by direct proof." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986) ("While the Act is silent concerning how the

government is to proceed at a detention hearing, the thrust of the legislation is to encourage informal methods of proof. Congress did not want detention hearings to resemble mini-trials . . . . Congress explicitly left open what kinds of information would be a sufficient basis for release, choosing to leave the issue to the judgment of the courts on a case-by-case basis."). Similarly, the First Circuit Court of Appeals found that "Congress did not intend to forbid the judicial officer to rely upon investigatory descriptions of evidence (and similar hearsay) where the judicial officer reasonably concludes that those descriptions, reports, and similar evidence, in the particular circumstances of the hearing, are reliable." *United States v. Acevedo-Ramos*, 755 F2d 203, 207 (1st Cir. 1985). The Court of Appeals stressed that judges "possess[] adequate power to reconcile the competing demands of speed and of reliability, by selectively insisting upon the production of the underlying evidence or evidentiary sources where their accuracy is in question." *Id.*

At least one district court has addressed Gaston's specific argument that he faces hearsay evidence that is difficult to counter. In *United States v. Cabrera-Ortigoza*, the court explained that "[t]he judicial officer presiding at the detention hearing is vested with discretion whether to allow defense counsel to call adverse witnesses." *United States v. Cabrera-Ortigoza*, 196 F.R.D. 571, 574 (S.D. Cal. 2000). Further, "[w]ithout a proffer from the defendant that the government's proffered information is incorrect, the magistrate judge is not required to allow the defendant to cross-examine the investigators and police officers." *Id.* The Court went on to explain:

> The requirement of a counter proffer contemplates an offer or a tender of what other witnesses would say[] "in reasonable detail[,]" calling into question the reliability or correctness of the government's proffer. This goes beyond a blanket "denial" or "objection" by the defense of the government's proffer or the more obscure requests that the issue [cannot] be addressed without cross examination and/or discovery. Simply stated, absent something credible to challenge the reliability or the correctness of the government's proffer, the Court need not compel live witnesses to testify.

10

*Id.* at 574-75; *see also United States v. Graham*, No. CR20-156RSM, 2021 WL 75256, at *3 (W.D. Wash. Jan. 8, 2021) (rejecting argument that government's proffer regarding defendant's attempt to elude arrest for the charged conduct did not "amount to a preponderance of the evidence that the incident happened as described or that [the defendant] was involved" where defendant "proffered no evidence of his own that credibly challenge[d] the [g]overnment's proffer").

Consistent with these decisions, the Court concludes that it is appropriate to consider uncharged conduct and hearsay in the detention analysis, but with a thorough examination of the reliability of such evidence. As the Second Circuit Court of Appeals explained in *Martir*, "[i]n the informal evidentiary framework of a detention hearing, the methods used to scrutinize government proffers for reliability must lie within the discretion of the presiding judicial officer, informed by an awareness of the high stakes involved." 782 F.2d at 1147. The Court is also mindful that the Seventh Circuit Court of Appeals has cautioned that "[p]olice reports are not presumed to be categorically reliable." *United States v. Jordan*, 742 F.3d 276, 280 (7th Cir. 2014). While that warning came in a case involving the revocation of supervised release, which has a separate framework under Federal Rule of Criminal Procedure 32.1 and applicable statutory provisions, the Court of Appeals' reasoning included reference to the logic behind excluding police reports from the hearsay exception in Federal Rule of Evidence 803(8) due to the inherently adversarial nature of such reports and a recognition that detail alone does not significantly add to the reliability of a police report. *Id*. Those concerns are equally at play here.

To be clear, the Court makes no finding that the information in the reports the government proffered are false, nor does it assume all of the information proffered or contained in such reports is reliable. The Court instead looks to whether additional evidence corroborates the information in the government's proffer. Accordingly, reports that rely merely upon witness statements are given

11

no weight, since the Court is without sufficient information to address the reliability of those witnesses. Other information, such as the number of firearms that Gaston purchased and the subsequent involvement of such firearms in criminal activity, are subject to verification and given greater weight, albeit less weight than a criminal conviction would carry. Against this backdrop, the Court turns to an analysis of the statutory factors below.

### III. Statutory Factors

Under Section 3142(g), the Court considers several factors when determining whether there are any conditions or combination of conditions of release that will reasonably assure the appearance of the defendant and the safety of any other person and the community, including:

> (1) the nature and circumstance of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including-
>
>> (A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, he was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Regarding the nature and circumstances of the offenses charged, the government alleges that Gaston has, on multiple occasions, made false statements in connection with the acquisition of a firearm. Specifically, the Indictment states that Gaston provided an address where he did not

reside on a form used in the purchase of firearms. The rules and regulations concerning the sale of firearms help ensure that such firearms do not end up involved in criminal activity or fall into the hands of those who are prohibited from possessing firearms, which is precisely what the government argues happened here. Since any conduct involving a firearm is inherently concerning in terms of potential dangerousness, this factor weighs in favor of detention.[3]

Regarding the weight of the evidence for the alleged offenses, the government proffered that Gaston did not live at the address he provided to purchase the relevant firearms. The government stated that the individual who lives at the address given by Gaston has lived there since December 2017, and that they do not know Gaston and Gaston does not reside there. Gaston argued that, in certain cases, inaccurate information given in relation to the purchase of a firearm is immaterial. As Gaston noted, the Seventh Circuit Court of Appeals has previously explained that it "never went so far as to declare that providing a false address, in every case, is material as a matter of law." *United States v. Bowling*, 770 F.3d 1168, 1177-78 (7th Cir. 2014). The government has its arguments on materiality and the defense has counterarguments, although it appears that Gaston may have lived at his true address with a convicted felon, which may bear on materiality. The Court finds that this factor does not weigh strongly either in favor of or against detention.

The Court considers the final two enumerated factors together, which weigh in favor of detention. As discussed above, the Court gives no weight to uncharged conduct that lacks corroborating sources. And, even when such information is corroborated, it is given significantly less weight than criminal convictions. There was some discussion of conduct committed when Gaston was a juvenile, but this was from almost a decade ago, and the Court has not relied upon

---

[3] As discussed above, Section 3142(g)(1) specifically directs courts to consider whether the nature and circumstances of an offense involve a firearm. 18 U.S.C. § 3142(g)(1).

it. Additionally, the government proffered that there were multiple incidents in 2018 involving possible battery and threatening behavior, almost all of which involved a firearm. The Court places no weight on several of these incidents due to the lack of charges, lack of corroborating evidence, and inability to examine the credibility of any of the witnesses.

The incidents the Court has considered are as follows. Gaston has a pending battery charge in Indiana state court, stemming from an incident in 2018. The victim advised that Gaston slapped her repeatedly, shoved her against an iron fence, and held her there by pulling her hair. The victim's injuries were corroborated by medical personnel who arrived on the scene and observed bruising on her upper cheek and a bump on her head. Additionally, an uncharged incident in 2018 involved allegations of pistol whipping a victim with a specific firearm that matched the description of a firearm that law enforcement later found on Gaston. The Court finds these incidents deeply troubling, but notes that they are only partially corroborated. Ultimately, the Court places some weight on these allegations, but is mindful that such evidence is due much less weight than actual convictions, or for that matter evidence with greater indicia of reliability. However, the government did raise other issues regarding Gaston's lack of candor, and the Court stresses that all potential conditions of release would require a greater degree of candor and willingness to be truthful with probation officers than Gaston has displayed.

What the Court finds most concerning in its consideration of these factors is that multiple firearms Gaston purchased were later recovered from convicted felons, at least one of the firearms Gaston purchased has yet to be recovered, and Gaston exhibited a lack of candor with probation regarding the details of his residence, where multiple firearms were eventually recovered. One firearm Gaston received in April 2020 was later recovered in July 2020 from a felon in Chicago. Another firearm Gaston purchased in June 2020 was subsequently recovered twenty-two days later

from a convicted felon. And the government reported that three firearms were recovered at Gaston's apartment, and the location of one or more remaining firearms is unknown.[4]

At the hearing held on March 22, 2021, a probation officer informed the Court that Gaston indicated that he lived in a rented apartment with his cousin, Paul Johnson. When questioned regarding the feasibility of electronic monitoring, probation stated that it would need to obtain additional information regarding Johnson to ensure that he was not a felon. Probation asked Gaston for Johnson's contact information and date of birth, which Gaston was unable to provide. However, Gaston noted that his mother recently stated that Johnson had moved out and was staying in a hotel. On March 24, 2021, probation provided the Court with a memorandum explaining that, on March 23, 2021—after the first portion of the detention hearing held the day before, and after Gaston stated that his mother informed him that Johnson had moved out—probation spoke to Gaston's mother, who represented that Johnson resided in the same apartment where Gaston was living. Furthermore, probation noted that a background check revealed that Johnson is a convicted felon. Given the timeline of these events and statements, the Court has grave concerns regarding Gaston's candor with probation. And that lack of candor weighs heavily in favor of detention in this case. Without candor and cooperation with probation, it would be impossible to impose conditions that would reasonably assure that firearms are not provided to either Gaston or those who are not legally entitled to possess them.

The Court finds that the government has not met its burden of showing by a preponderance of evidence that there are no conditions or combination of conditions that can reasonably assure

---

[4] The government initially proffered that it was aware of eight firearm purchases by Gaston, but later indicated that at least one record of a transaction may have been a duplicate. The record is therefore unclear regarding the exact number of unrecovered firearms, due to uncertainty regarding Gaston's total firearm purchases. However, the government clarified at the hearing on March 24, 2021, that the location of at least one firearm is still unknown, and possibly additional firearms are unaccounted for.

the appearance of Gaston as required. However, the Court finds that the government has met its burden of showing by clear and convincing evidence that there are no conditions or combination of conditions that can reasonably assure the safety of any other person and the community should Gaston be released. That two firearms Gaston previously purchased ended up in the hands of felons is both strongly corroborated and indicative of a serious risk to community safety, as is the fact that there is at least one firearm Gaston purchased that has yet to be recovered. These facts, coupled with Gaston's lack of candor with probation, lead the Court to the conclusion that there are simply no conditions or combination of conditions that can reasonably assure the safety of any other person or the community. Perhaps the unaccounted-for firearms are stored safely at some location, or already passed on to another individual. However, without some assurance that no firearm is easily available and subject to further transfer, the Court lacks a reasonable assurance of community safety.

## CONCLUSION

For the foregoing reasons, the Court hereby **REMANDS** Defendant Jarcques Gaston to the custody of the U.S. Marshal Service pending trial.

So ORDERED this 26th day of March, 2021.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT
